In re Anil K. MUKERJEE, Debtor.

Robert G. GORDON and Robert D. Coli, Plaintiffs,

v.

Anil K. MUKERJEE, Defendant.

Bankruptcy No. 86–386.
Adv. No. 87–143.

United States Bankruptcy Court,
D. New Hampshire.

March 30, 1989.

James B. Hobbs, Nashua, N.H., for Robert L. Gordon.

Joseph C. Krolikowski, Nashua, N.H., for Robert Coli, M.D.

Victor L. Hatem, North Anodver, Mass., for Anil K. Mukerjee.

## MEMORANDUM OPINION

JAMES E. YACOS, Bankruptcy Judge.

This chapter 7 case came before the court for trial upon the above-captioned adversary proceeding on July 18, 1988 regarding an Amended Complaint Objecting to Discharge filed by Robert L. Gordon and Robert D. Coli, creditors, and the Answer thereto filed by Anil K. Mukerjee, debtor. The specific grounds for a denial of discharge were set forth in this court's Supplemental Pre–Trial Order dated July 6, 1988, which grounds are as follows:

(1) A § 523(a)(3) charge based upon an alleged failure to list or schedule a debt owing to the creditor-plaintiffs;

(2) A § 727(a)(2) charge based upon an alleged transfer with the intent to defraud within one year before the date of the filing of the petition;

(3) A § 727(a)(4)(A) charge based upon an alleged false oath made by the debtor with regard to income and expenses set forth in the bankruptcy schedules; and

(4) A § 727(a)(4)(A) charge based upon an alleged false oath and account with regard to the value of personal property set forth in the bankruptcy schedules.

At the conclusion of the trial the court found that the first three grounds for denial of discharge were not supported by the record.

Accordingly, the only ground for denial of discharge presently before the court is premised upon section 727(a)(4)(A) of the Bankruptcy Code based on an alleged false oath and account with regard to the value of personal property set forth in the bankruptcy schedules. The court found that there are three discrepancies between the personal property listed in debtor's bankruptcy schedules and the personal property actually owned by the debtor. The court dictated its findings of fact into the record at the conclusion of the trial, which findings are set forth below.

## FACTS

The debtor filed a voluntary petition under chapter 7 of the Bankruptcy Code on August 27, 1986. The debtor omitted certain information from his schedules, including the existence of two bank accounts and an automobile. In his schedules the debtor also undervalued his interest in household goods and furnishings. These three discrepancies are detailed below.

The first discrepancy concerns the debtor's bank account balances. The debtor was asked whether he had any bank account balances as assets and, in Schedule B–2, he indicated "NONE". Debtor has now conceded that, at the time of filing the petition, he did have two bank accounts. One bank account was with the Pelham Bank and Trust Company, with a balance in the amount of $110.00 and the other bank account was with the Nashua Trust Company, with a balance in the amount of $65.00.

The second discrepancy concerns the debtor's interest in household goods and furnishings. The debtor was asked to indicate the value of his interest in household goods and furnishings and, in Schedule B–2, he indicated $100.00. The court found that "the evidence indicates that when debtor purchased a condominium apartment in July of 1985, he listed personal property, furnishings, etcetera in the loan application at a value of approximately $23,000.00. He himself testified that during the period from 1980 to 1981 he and his wife acquired personal furnishings and property that originally cost $23,000.00. The debtor's half interest in the original cost of this property would therefore be $11,500.00."

The third discrepancy concerns the debtor's interest in any vehicles. The debtor was asked to list any automobiles or other vehicles in which he had an interest and, in Schedule B–2, he listed one vehicle, a 1984 Toyota Tercel Wagon. The court found that "it is uncontroverted on this record that the debtor did not list another vehicle that was titled partly in his name, a 1984 Honda Accord, which was titled in his and his wife's name."

## ANALYSIS

Under section 727(a)(4)(A), a debtor's discharge is to be denied if "the debtor knowingly and fraudulently, in or in connection with the case ... made a false oath or account ..." 11 U.S.C. § 727(a)(4)(A). The purpose of this section is "to provide the administrators of the debtor's estate with reliable information without the need for exhaustive investigations. Since the trustee and creditors are entitled to know what property has passed through the debtor's hands during the period prior to the bankruptcy, and the debtor has no inherent right to a discharge, his cooperation is impelled by § 727(a)(4)(A)'s sanction for dishonesty." *In re MacDonald*, 50 B.R. 255, 259 (Bankr.D.Mass.1985) (citations omitted). "The successful functioning of the bankruptcy [code] hinges both upon the bankrupt's veracity and his willingness to make a full disclosure." *In re Mascolo*, 505 F.2d 274, 278 (1st Cir.1974).

A debtor's discharge should not be denied under section 727(a)(4)(A) if the false statement is due to mistake or inadvertence, *see* 4 *Collier on Bankruptcy* ¶ 727.04[1A] at 727–6, n. 14 (15th ed. 1979), or if the mistake is technical and not real. *In re Tully*, 818 F.2d 106, 73 B.R. [49] (1st Cir.1987). As stated by the United States Court of Appeals for the First Circuit, "under § 727(a)(4)(A), the debtor can be refused his discharge only if he (i) knowingly and fraudulently made a false oath, (ii) relating to a material fact." *In re Tully*, 818 F.2d at 110, 73 B.R. at [53].

■ A false statement is knowingly and fraudulently made if the debtor "knows the truth and nonetheless wilfully and intentionally swears to what is false." *In re Ingle*, 70 B.R. 979, 984 (Bankr.E.D.N.C. 1987), *quoting In re Cline*, 48 B.R. 581, 584 (Bankr.E.D.Tenn.1985). The First Circuit notes that "'reckless indifference to the truth' ... has consistently been treated as the functional equivalent of fraud for purposes of § 727(a)(4)(A)." *In re Tully*, 818 F.2d at 112, 73 B.R. at [55] (citation and footnote omitted). "The false oath may consist of a false statement or omission in the debtor's schedules or statement of affairs...." *In re Irving*, 27 B.R. 943, 945 (Bankr.E.D.N.Y.1983), (citations and footnote omitted).

■ The requirement that a false oath be material is satisfied "if the false oath bears a relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of the debtor's property." *In re Johnson*, 82 B.R. 801, 805 (Bankr.E.D.N.C.1988), *citing In re Williamson v. Firemans Fund Insurance Co.*, 828 F.2d 249, 251–52 (4th Cir.1987) (citing *In re Chalik*, 748 F.2d 616 (11th Cir.1984)). "A trivial matter which has but little effect upon the estate and the creditors is treated as immaterial." *In re Irving*, 27 B.R. at 945 (citations omitted).

The burden of proof rests with the objecting creditors, *In re Tully*, 818 F.2d at 110, 73 B.R. at [53] (citation omitted), but "'once it reasonably appears that the oath is false, the burden falls upon the bankrupt to come forward with evidence that he has not committed the offense charged.'" *Id.*, *quoting Matter of Mascolo*, 505 F.2d 274, 276 (1st Cir.1974). "It is an 'overriding consideration that equitable principles govern the exercise of bankruptcy jurisdiction'" and in that aspect "the statutory right to a discharge should ordinarily be construed liberally in favor of the debtor." *Id.* (citations omitted). "On the other hand, the very purpose of certain sections of the law, like 11 U.S.C. § 727(a)(4)(A), is to make certain that those who seek the shelter of the bankruptcy code do not play fast and loose with their assets or with the reality of their affairs.... Neither the trustee nor the creditors should be required

to engage in a laborious tug-of-war to drag the simple truth into the glare of daylight." *Id.* (citations omitted).

In the present case, the objecting creditors' prima facie case was made out beyond the shadow of a doubt. There is no question that the debtor made false oaths in his schedules by omitting any reference to two bank accounts and to a vehicle and by undervaluing his interest in household goods and furnishings.

The debtor's justification for failing to list his bank accounts is that the account with the Pelham Bank and Trust Company, with a balance of $110.00, was "a substantially inactive account," and that the account with the Nashua Trust Company, with a balance of $65.00, was "inadvertently listed as cash in the Petition." *Defendant's Memorandum of Law,* p. 2. The debtor further explains that the Pelham Bank account "was a joint account, only contained $110.00, had been used less than an average of once a month for the ten months preceding the bankruptcy filing and was handled almost exclusively by [his] wife." *Id.,* p. 6.

At the conclusion of the trial, the court ruled that "the failure to list those accounts is a substantial discrepancy in any bankruptcy schedules inasmuch as it is not just the balance that counts, it is the fact of having a bank account that then puts the trustee on inquiry as to checking the history of that account to see if there were any improper transfers or anything else that would suggest further investigation. By listing nothing, the debtor here has deflected the estate, the trustee, and the creditors from inquiring further into that matter. The fact that, after an objection to his discharge was filed, the debtor conceded that he had two bank accounts is not necessarily controlling on a denial of discharge."

The court of appeals for this circuit acknowledged the import of an omission of a bank account in *In re Mascolo,* 505 F.2d 274 (1st Cir.1974). In *Mascolo* the debtor, in response to a question in the Statement of Affairs as to any bank accounts the debtor maintained, answered "none". The appellate court noted that the "omission of an irrelevant matter or of property having no value is not necessarily fatal." *In re Mascolo,* 505 F.2d at 277 (citations omitted). But, the court stated, "Mascolo's false statement does not fall into that narrow category. Matters are material if pertinent to the discovery of assets, including the history of a bankrupt's financial transactions.... Therefore, knowing and fraudulent omission of a bank account, whether or not it is closed at the time of filing, warrants the denial of discharge." *Id* at 277–78 (citations omitted).

The debtor failed to explain the valuation of his interest in the household goods at the time of trial, but rather explains it in his Memorandum of Law that was filed subsequent to the trial. The debtor's justification for his undervaluation of his interest in household goods and furnishings is that "the value entered in the Petition was based on his portion of the value ... in a distress situation." *Defendant's Memorandum at Law,* p. 8. The debtor states that the valuation of $23,000.00 set forth in the condominium loan application, which is dated July 6, 1985, was thirteen months prior to the filing of his chapter 7 petition, and that the $23,000.00 valuation was submitted on a *joint* financial statement. *Defendant's Memorandum of Law,* p. 2 (emphasis in original). (Rather than addressing the valuation of $100.00 for household goods set forth in Schedule B–2, the debtor refers to his Summary of Debts and Property wherein he lists household goods at a value of $500.00 and office equipment and supplies at a value of $500.00.)

The debtor states that he had purchased the household goods and furnishings five years prior to his chapter 7 petition and that "after reviewing the liquidation value of the furniture, jointly owned with his wife, in light of its age and other factors," the liquidation value was $500.00 in his opinion. He notes, however, that in fact he listed the liquidation value as $1,000.00. The debtor has not provided any testimony or documentation to support his assessment of the liquidation value of the furniture. The court notes that the value for

the debtor's interest in household goods is listed in Schedule B–2 as $100.00, however in Schedule B–4, wherein a debtor sets forth the value of items claimed exempt, the same property is valued at $2000.00.

The question then is whether it was a false oath for the debtor to list his half interest as $100.00 on Schedule B–2 in August of 1986, approximately one year after the condominium application and approximately five to six years after the items were acquired.

According to the debtor's reasoning, the value of household goods and furnishings did not decline at all during the first five to six years that he possessed the items. However, within the next thirteen months the value allegedly declined approximately 96 percent—on the basis of the $1,000.00 value in the Summary of Debts and Property—and approximately 99.6 percent—on the basis of the $100 value in Schedule B–2. Even considering the concept of liquidation or distress value and even considering that the debtor's interest constitutes only 50 percent of the total value, the low valuations set forth above are too far from "trivial" to constitute an immaterial misrepresentation. The court seriously questions the debtor's veracity in preparing his schedules, particularly when the debtor lists the value for his interest in household goods in Schedule B–2 is $100 and yet claims the same items for an exemption value of $2,000.00 on Schedule B–4.

The debtor's justification for failing to list his interest in a 1984 Honda Accord is as follows:

> The Debtor was confronted with a choice when he filed his petition. The Debtor and his wife owned two cars. Since he was the only one filing the Petition it was appropriate to list one car. Of the two cars, both had approximately the same net equity. However, one of them was owned jointly and the other was owned *solely* by the Debtor. It was, therefore, an easy decision. The car which was owned solely by the Debtor, the 1984 Toyota, was listed. No fraud, just a simple property law based decision.

*Defendant's Memorandum of Law*, p. 7. This explanation, however, is completely unsatisfactory. Schedule B–2 specifically requires the debtor to list the "market value of *debtor's interest*". The debtor has acknowleged that he owned the 1984 Honda Accord jointly with his wife; any reasonable debtor would acknowledge that 50 percent of the market value of such jointly-owned item should be listed on his schedules.

## CONCLUSION

◼ The court finds and rules that the debtor should be denied a discharge pursuant to section 727(a)(4)(A) of the Bankruptcy Code. The debtor made sworn false statements both in his petition and in testimony to the trustee at the meeting of creditors and equity security holders held pursuant to section 341(a) of the Bankruptcy Code, and admitted making such false statements only during examination at the adversarial trial. The debtor falsely denied having bank accounts until later investigation revealed their existence. He falsely claimed to own only one automobile. Lastly, the debtor failed to list $22,500.00 worth of household items and collections in his schedules, and failed to explain in any satisfactory manner either the difference in value or where the assets might have gone, even taking for purposes of argument the higher $2000.00 figure used in his claim of exemption.

The cumulative effect of the debtor's omissions and undervaluation evidences a pattern of non-disclosure, in contradiction to the concept of an honest debtor for which the protections and benefits of bankruptcy law are intended.

The debtor's false oaths made his case appear to be a "no asset" case, thereby eliminating further inquiry by creditors or the trustee. The debtor's original chapter 7 petition was filed on August 29, 1986, and the trustee filed a report on October 15, 1986 in which the trustee attests that "there are no assets in the estate over and above the exemptions claimed by the debtor." In accordance with the trustee's report, this court entered an order dis-

charging the debtor on March 12, 1987. On April 3, 1987, the debtor filed an Amendment to List of Creditors, listing two additional creditors, plaintiffs herein, with a total secured debt of $164,330.68 and a total unsecured debt of $179,628.66. Subsequently, on April 15, 1987, the debtor filed a Motion to Reopen his bankruptcy case in order to list the plaintiffs herein as creditors.

The court finds that the facts stated herein justify a finding that the debtor made material false oaths in connection with his bankruptcy case, which material false oaths require the denial of the debtor's discharge under section 727(a)(4)(A) of the Bankruptcy Code.

A judgment revoking the debtor's discharge shall be entered in accordance with this opinion.

A separate Final Judgement will be entered in accordance with this Opinion.