**In re Paul SLATER, Debtor.**

**Diane L. Jensen, Trustee In Bankruptcy, Plaintiff,**

**v.**

**Paul Slater, Defendant.**

**Bankruptcy No. 9:03–BK–06967–ALP. Adversary No. 03–640.**

United States Bankruptcy Court, M.D. Florida, Fort Myers Division.

Dec. 3, 2004.

James T. Demarest, Naples, FL, Diane L. Jensen, Fort Myers, FL, for Debtor.

Robert L. Donald, Fort Myers, FL, United States Trustee, Tampa, FL, for trustee.

## FINDINGS OF FACT, CONCLUSION OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Bankruptcy Judge.

The matter under consideration in this Chapter 7 case of Paul Slater (Debtor) is a

challenge of the Debtor's right to the protection of the general discharge. The challenge presented for this Court's consideration is through a three Count Complaint filed by Diane L. Jensen (Trustee), the Trustee of the estate of the Debtor. The Trustee's claim in Count I is based on Section 727(a)(2) of the Bankruptcy Code and alleges that the Debtor intended to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of the property, and has concealed, or has permitted to be concealed, property of the Debtor within one year preceding the commencement of his Chapter 7 Petition. The claim in Count II is based on Section 727(a)(3) of the Bankruptcy Code and according to the Trustee the Debtor failed to keep adequate books and records from which his financial condition could be an ascertained.

In the third Count of the Trustee's Complaint, which is entitled, Count II—11 U.S.C. § 727(a)(4), the Trustee alleges that the Debtor knowingly and fraudulently made a false oath or account in connection with the case by failing to disclose assets and transfers. Based on these, the Debtor should not be entitled to the protection of the general discharge pursuant to Section 727(a)(4) of the Bankruptcy Code.

The Debtor filed his Answer in due course and admitted some, but denied all allegations relevant to the Objection of the Trustee.

This Court has considered the record including testimony of witnesses and all documentary evidence offered and admitted into evidence and now makes the following findings and conclusions based on the record.

The Debtor was born and educated in the United Kingdom (England). After graduation, the Debtor served an Article Clerkship as a Charter Accountant. After completing his clerkship, he became an Associate of the Institute of Charter Accountants in 1967 and was admitted to Fellowship in 1970. Although he is a Chartered Accountant, he did not work as an accountant, but rather operated his own business for the past 30 years. The Debtor formed and operated First International Corporation (FIC). He was the principal, if not the sole stockholder and officer of FIC. Although the Debtor lived in the United States during the last 30 years, the business operated on a global basis and maintained offices in London, Greece, and Hong Kong. FIC was in the business of international finance and banking, specializing in the international maritime industry, and acted as a management consultant.

On April 7, 2003, the Debtor filed his voluntary Petition for Relief under Chapter 7. His bankruptcy Petition was accompanied by his Schedule of Assets and Liabilities, Statement of Financial Affairs, and the other documents required by FRBP 1007. On his Schedules, the Debtor listed the following:

- Schedule A. Real Property: None
- Schedule B. Personal Property:
  - Cash in bank account; Security Deposit for lease of 425 Cove Tower Dr., Unit 1701; Security Deposit for lease of 455 Cove Tower Dr., Unit 1601; Books; Clothing; Firearms and Sports Equipment; 100 Shares in First International Corporation; Leased 2002 Ford Explorer and Motor Scooter.

On the Debtor's Schedule of Liabilities, he scheduled the following:

- Schedule D. Creditors Holding Secured Claims: Ford Motor Credit
- Schedule E. Creditors Holding Unsecured Priority Claims: None
- Schedule F. Creditors Holding Unsecured Nonpriority Claims:

- Bank of America Visa; Bank of Butterfield c/o Thomas C. Fearing, Esq.; Chase Gold Visa; Citi Gold Visa; First USA Bank (British Airways Visa); Florida AAA Investments, Inc.; Harrods; Holman Fenwick & Willan; Jacobson's; Lachman & Lachman; Rabobank, Einhoven, Holland; Saks Fifth Avenue Credit Card; Sinclair Roche & Temperly; SunTrust Bank Visa; The Mortgage Business PLC

On the Debtor's Statement of Financial Affairs, he gave the following answers to the following questions:

- 3. Payments to Creditors: None
- 6. Assignments and receiverships: None
- 7. Gifts: only listed 3 bicycles valued at $75.00
- 10. Other Transfers: None
- 14. Property held for another person: None

The Debtor and his wife reside in an apartment leased by his wife. The monthly rental is $2,700.00. The Debtor's wife was also leasing a Jaguar automobile for $896.57 per month. However, it is without dispute that she does not have any meaningful income sufficient to make these payments. Prior to the current residence, the Debtor rented and resided in a different apartment which required a monthly rental of $3,500.00. In addition, the Debtor paid the landlord the amount of $5,000.00 as a security deposit on the apartment. Currently, the Debtor has been unable to recover the $5,000.00 security deposit because the landlord disputes the Debtor's rights to the deposit, since the Debtor moved out of the apartment prior to the termination of the lease.

It appears that either the Debtor and/or his wife are the owners of a condominium located in London, England, or that the condominium is owned by a Trust set up by the Debtor, where he is acting as Trustee. The beneficiaries of the Trust are possibly his mother who lives in the condominium and his children. Be that as it may, three or four months before he filed his bankruptcy, the Debtor borrowed £100,000.00 and granted a mortgage on the condominium to secure this loan. According to the Debtor, the funds received from this loan were deposited in the Coutts bank account, except for £10,000.00, which was deposited into a joint account held by the Debtor and his wife at SunTrust Bank. There is unrebutted evidence in the record to warrant the finding that the Debtor maintained a bank account in the Coutts Bank in London, England. The expenses of the maintenance of this condominium (i.e. mortgage payments and taxes) are paid by checks drawn on the Coutts bank account.

The Debtor and his wife also hold title to a residence located in Eindhoven, Holland. The Debtor's mother-in-law currently occupies this real property, and expenses to maintain this property are paid out of a bank account held by the Debtor at Rabobank, in Eindhoven, Holland.

It is also without dispute that the Debtor paid the following sums within the year preceding the commencement of this case:

- To family members:
  - Barbara Slater (the Debtor's wife) for $56,500.00; Paul Slater (the Debtor) for 4,300.00; Mark Slater (the Debtor's son) for $200.00; John Slater for $300.00; Alexander Slater for $100.00
- To First International Corporation for $44,400.00
  - Whereby the Trustee alleges that the Debtor should have listed as a Receivable for $1,000,000.00
- To other persons or entities:

- Boston College (the Debtor's son's school) for $5,400.00; Rent payment of $2,700.00 per month for a condominium in Naples, FL.; Lease payment of $800.00 per month for the Debtor's wife's Jaguar automobile; Mortgage payment on the England property of £8,089.58; Tax bill payment on the England property of £1,401.86; Maintenance charge payment on the England Property of £2,611.25; Telephone charges on the England Property of £329.02; School payments for the Debtor's son of £555.81; Outright payment made to son of £810.00.

In sum, the Debtor transferred a total of $111,200.00 in U.S. funds and £13,797.00 from the Coutts Bank Account in British Pounds Sterling, and has a potential Receivable from First International Corporation for $1,000.000.00.

Based on these facts, the Trustee contends that the record more than supports her claim that the Debtor is not entitled to a general bankruptcy discharge. As outlined earlier, the Trustee asserted three separate counts for the denial of the discharge. In Count I, the Trustee sought denial of the Debtor's discharge pursuant to 11 U.S.C. § 727(a)(2) of the Bankruptcy Code; Count II, pursuant to 11 U.S.C. § 727(a)(3) of the Bankruptcy Code; and in the third Count, entitled Count II—11 U.S.C. § 727(a)(4), pursuant to 11 U.S.C. § 727(a)(4) of the Bankruptcy Code.

The purpose of the Bankruptcy Act of 1898 was to give the debtor a "new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt." *Lines v. Frederick,* 400 U.S. 18, 91 S.Ct. 113, 27 L.Ed.2d 124 (1970). The various provisions of the Bankruptcy Act of 1898, were adopted in the light of that view and are to be construed when reasonably possible in harmony with it so as to effectuate the general purpose and policy of the act. *Local Loan Co. v. Hunt,* 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934). These principles are equally applicable when one considers the discharge provision of the Bankruptcy Code.

It is well established that the discharge is a privilege, reserved to honest Debtors, and one of the primary purposes of the Bankruptcy Code, is to relieve the honest debtor from the weight of oppressive indebtedness, and permit him to start afresh, free from the obligations and responsibilities consequent upon business misfortunes. Jurisprudence is unequivocal that objections to discharge are to be construed strictly and liberally, liberally in favor of a debtor and strictly against creditors in order to further a fresh start policy of the Code. *In re Gill,* 159 B.R. 348, 352 (Bankr.M.D.Fla.1993). In weighing the facts put forward in a contest over a discharge, the Court must bear in mind the beneficial policy of allowing honest debtors to receive a fresh start in life. *In re Lind,* 6 B.R. 374, 377 (Bankr.S.D.Tex.1980).

The standard of proof is no longer clear and convincing evidence, a mere preponderance of the evidence is sufficient to deny the Debtor's right to a general discharge. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *In re Gipe,* 157 B.R. 171, 176 (Bankr. M.D.Fla.1993). The burden of proof in objecting to a discharge is placed on the plaintiff pursuant to Rule 4005 of the Federal Rules of Bankruptcy Procedure.

Considering first the claim of the Trustee based on fraudulent concealment of property, this Court is satisfied that there is no evidence to support this Claim. It is well recognized, that the debtor's discharge would not be denied based on his alleged fraudulent concealment when

based on the allegations the debtor failed to fully and properly disclose certain matters upon his bankruptcy schedules. *In re Brenes,* 261 B.R. 322 (Bankr.D.Conn.2001). While errors on the Chapter 7 debtors schedules may be sufficient to warrant to a denial of the debtors' discharge on the grounds of "false oaths" it is not based on concealment. *In re Martin,* 239 B.R. 610 (Bankr.N.D.Fla.1999). "Concealment" of property might warrant a denial of a debtor's discharge, which generally involves transfer of legal title to property to a third party with the debtor retaining all benefits of ownership of the property. *In re McFarland,* 170 B.R. 613 (Bankr.S.D.Ohio 1994); *In re Maletta,* 159 B.R. 108 (Bankr. D.Conn.1993). It should be evident from the foregoing that before a claim of concealment may be found to be a valid ground to deny discharge the debtor must have engaged in affirmative conduct and the mere passive conduct such as omitting property from the schedules is not sufficient to sustain the claim of concealment as the grounds to deny discharge.

Based on the foregoing, this Court is satisfied that a claim of concealment has not been established by the Trustee therefore, it cannot be a basis for a denial of the Debtor's discharge.

The Trustee also contends that the Debtor failed to maintain documents, records and/or has concealed, destroyed, or has failed to keep or preserve any recorded information, including but not limited to books and records from which his financial information might be ascertained. This record is devoid of any evidence that the Debtor in fact failed to keep books and records, or failed to produce such books and records to the Trustee when requested. Therefore, for the reasons stated this Court finds that there is no basis to deny the Debtor's discharge on this ground pursuant to 11 U.S.C. § 727(a)(3) of the Code.

This leaves for consideration the claim of false oath. The Eleventh Circuit in *In re Chalik,* 748 F.2d 616, 618 (11th Cir. 1984), established the measure for determining what is a "false oath" and set an important benchmark under 11 U.S.C. § 727(a)(4)(A). In *Chalik,* the debtor filed bankruptcy in May of 1992 and failed to disclose numerous allegedly worthless corporations on his schedules. *Id.* at 617. However, at least five of said twelve omitted corporations had significant assets and were producing significant income less than two years prior to the filing. *Id.* In determining the standards to apply, the Eleventh Circuit cited the First and Second Circuits which ruled against debtors and found that a false oath regarding worthless assets constitutes a material omission and precludes discharge. *Id.*

In its holding, the *Chalik* court quoted *In re Robinson,* 506 F.2d 1184, 1188 (2d Cir.1974), which stated "[e]ven though truthful responses to the questions propounded by the bank's counsel would not have increased the value of the bankrupt's estate, they were certainly material to discovering what, if any, assets Robinson may have had." *Id.* It also highlighted the First Circuit's decision, *In re Mascolo,* 505 F.2d 274, 277–78 (1st Cir.1974), which held that "[m]atters are material if pertinent to the discovery of assets, including the history of the bankrupt's financial transactions.... Therefore, knowing and fraudulent omission of bank account, whether or not it is closed at the time of filing, warrants the denial of discharge." *Id.*

The subject matter of a false oath is "material," and thus sufficient to bar discharge, if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of property. *In re Steiker,* 380 F.2d 765, 768 (3d Cir.1967). See also

*Metheany v. United States,* 365 F.2d 90, 93 (9th Cir.1966) ("material matter" refers not only to the main fact, which is subject to inquiry, but also to any fact or circumstance which tends to corroborate the proof adduced to establish the main fact.) The recalcitrant debtor may not escape a Section 727(a)(4)(A) denial of discharge by asserting that the admittedly omitted or falsely stated information concerned a worthless business relationship or holding; such a defense is specious. *Diorio v. Kreisler–Borg Construction Co.,* 407 F.2d 1330 (2d Cir.1969). It makes no difference that he does not intend to injure his creditors when he makes a false statement. Creditors are entitled to judge for themselves what will benefit, and what will prejudice them. *Morris Plan Industrial Bank v. Finn,* 149 F.2d 591, 592 (2d Cir. 1945). See *Duggins v. Heffron,* 128 F.2d 546, 549 (9th Cir.1942). The veracity of the bankrupt's statements is essential to the successful administration of the Bankruptcy Act. *Diorio, supra,* at 1331, *Chalik, supra,* at 618.

Equally, a Chapter 7 debtor who is an experienced business man could not successfully use the advise-counsel-defense in an Adversary Proceeding brought to deny his discharge based on omission of numerous assets from the schedules, specifically, when a Debtor declared under the penalty of perjury he had read the schedules and to the best of his knowledge they were true and correct. *In re Rosenzweig,* 237 B.R. 453 (Bankr.N.D.Ill.1999). Significant omissions of assets and information from a Chapter 7 debtor's schedules and statements of financial affairs warranted the denial of discharge, despite a debtor's claim that he relied on advice of counsel. It was proper to infer from the circumstances that the omissions were knowing and fraudulent. *In re Godley,* 164 B.R. 780 (Bankr.S.D.Fla.1994).

It cannot be gainsaid that it is the responsibility of the Debtor to make full and complete disclosure to the creditors of all matters, which are relevant to the Debtor's right to a discharge. It needs no elaborate discussion to point out that when the debtor signs a Statement of Financial Affairs under penalty of perjury, he certifies that all answers set forth in his Statement were true. The veracity of the Debtor's Statement is absolutely essential to a meaningful administration of his estate. *In re Watkins,* 84 B.R. 246, 250 (Bankr.S.D.Fla.1988); *Diorio, supra,* at 1330; *Chalik, supra,* at 616.

It is without dispute that an occasional omission from schedules will seldom, if ever be accepted as satisfactory proof of an omission of false oath. However, omissions of several significant assets and disclosures of significant transfers, which reveal a pattern, are willful and knowing admissions and therefore warrant a denial of discharge. While some innocent omissions due to oversight may be excused, numerous omissions from the Schedule of Assets and Statement of Financial Affairs, which reveal a pattern of unacceptable conduct is sufficient to sustain the claim of false oath. The Statement of Financial Affairs serves an important function for a purpose of insuring that adequate information is available to the Trustee.

The Debtor in this case is a highly educated man who has been involved in high finances all his adult life, dealing with investments in different enterprises in the millions. It behooves this Debtor to claim that he did not understand the questions in the Statement of Financial Affairs and, that he acted under the advice of his then attorney. This Court is constrained to reject these defenses and is satisfied that it is appropriated to sustain the Trustee's claim that the Debtor willfully and know-

ingly committed false oath in connection with this case.

Based on the foregoing, this Court is satisfied that the Trustee has not established with the requisite degree of proof all operating elements of the claims asserted in Count I—11 U.S.C. § 727(a)(2), (concealment) and Count II—11 U.S.C. § 727(a)(3), (books and records) of the Complaint.

Additionally, this Court is satisfied that the Trustee has established with the requisite degree of proof all operating elements of the claims asserted in the third Count of the Trustee's Complaint, which is entitled, Count II—11 U.S.C. § 727(a)(4), (false oath). Therefore, this Court is satisfied that the Debtor's discharge should be denied, pursuant to 11 U.S.C. § 727(a)(4).

A separate final judgment shall be entered in accordance with the foregoing.